## WOOD, Sheriff, v. ANDERSON, County Judge, et al.

### No. 10926.

Court of Civil Appeals of Texas. San Antonio.

Aug. 30, 1940.

Rehearing Denied Sept. 18, 1940.

John H. Wood, Jr., and Weber & Wolfe, all of San Antonio, for appellant.

John R. Shook, S. Benton Davies, W. Pat Camp, and T. H. Ridgeway, all of San Antonio, for appellees.

PER CURIAM.

This suit was instituted by Will W. Wood, Sheriff of Bexar County, Texas, against Charles W. Anderson, County Judge, and Robert F. Uhr, James W. Donnell, S. H. (Sam) Anderson and R. W. Stappenbeck, County Commissioners, in their respective official capacities, seeking among other things a temporary injunction and on final hearing a permanent injunction restraining the above-named County Judge and County Commissioners from attempting to assume authority to appoint, direct and discharge the janitors, elevator operators and engineers, and other persons employed to care for the courthouse of Bexar County, and also for similar injunc-

tions with reference to the Bexar County Highway Patrol as county traffic officers provided for by Article 6699b, Vernon's Texas Annotated Civil Statutes. The plaintiff below also prayed that the district court set aside and hold for naught an order passed by· said Commissioner's Court on May 17, 1940, whereby the Commissioner's Court undertook to take from the Sheriff the power to employ, direct, control and discharge the janitors, elevator operators and engineers, and to claim for itself this power. Plaintiff also asked that all subsequent orders made in furtherance of this purpose be set aside.

. A temporary restraining order was granted but upon a hearing a temporary injunction was refused and from this order Will W. Wood has appealed.

It was conceded at the trial that the Sheriff should have the employment, direction, còntrol and discharge of the jail guards and matrons employed in the operation of the county jail so they need not be further mentioned.

This suit presents two questions, to-wit:

First. Does the Commissioners' Court or the Sheriff of a county have the legal right to employ, direct, control and discharge the court house janitors, elevator operators and engineers?

Second: Does the Commissioners' Court or the Sheriff of a county have the legal authority to employ, direct, control and discharge the Highway Patrol officers provided for in Article 6699b Vernon's. Civil Statutes?

We . are of the opinion that the Sheriff and not the Commissioners' Court has the right to employ, direct, control and discharge the courthouse janitors, elevator operators, engineers, and other necessary employees, engaged in caring for the courthouse.

The office of Sheriff is one of great antiquity dating back at least to the time of Alfred, King of England. Under the common law the Sheriff was the custodian of the county (custodian comitatus) and the chief executive officer. He today has all such powers as he exercised at common law unless such powers have been taken away from him by expressed constitutional or statutory provisions. 11 Tex.Jur. § 54 p. 582.

The statutes not only do not take from the Sheriff his duties as custodian of the courthouse, but in addition to his common-law duty in this respect, Article 6872, R. C.S., expressly makes the Sheriff the custodian of the courthouse in ·the following language: "Sheriffs shall have charge and control of the courthouses of their respective counties, subject to such regulations as the commissioners court may prescribe; and the official bonds shall extend to and include the faithful performance of their duties under this article."

It is true that Article 1603, R.C.S., provides that the County Commissioners' Court of each county, as soon as practicable after the establishment of a county seat, or after the removal from one place to another, shall provide a courthouse and jail for the county, and offices for county officers at such county seat, and keep the same in repair; and that Article 2351, subdivision 7, R.C.S., provides that the "commissioners court shall * * * Provide and keep in repair court houses, jails and all necessary public buildings"; but these provisions in no way affect the sheriff's charge and control over the courthouse. It.is one thing to construct and repair a building and another thing to have the charge and control of the building. It will be noted that not only is the Sheriff placed in charge and control of the courthouse, but he is made responsible on his official bond for the faithful discharge of this duty. Art. 6872, supra.

If Arts. 1603 and 2351, supra, should be construed as giving the charge and control of the courthouse to the Commissioners Court, then the language contained in Art. 6872, supra, would become meaningless.

There seems to be no decision in Texas construing these statutes, but the case of Dahnke v. People, 1895, 57 Ill.App. 619, affirmed 168 Ill. 102, 48 N.E. 137, 140, 39 L.R. A. 197, seems to be very much in point. There the provisions to be construed were very similar to those here to be construed, the court said in part: "Hence it would seem to follow that, while the county board is entitled to the general care and custody over the ownership of the real estate belonging to the county so far as to hold the title thereto, and preserve the evidence of title, and so far as it is necessary to erect and keep in repair the buildings thereon, yet, after the particular court rooms in a court house have been provided for the judges, the possession thereof is in the hands and under the control of the courts

themselves, and the care and custody thereof rightfully belong to the sheriff, as the executive officer of the courts."

In McDonough County v. Thomas, 1899, 84 Ill.App. 408, it is said: "We are clearly of the opinion that the care and custody of the county court house and jail fall within the common-law powers and duties of the sheriff, and that the employment of a necessary janitor to assist him was a right incident to his office. That right continues with him to-day in this State unless it has been taken from him by some constitutional or statutory provision."

We now come to the question involving the county highway traffic officers. Art. 6699b, Section 1, Vernon's Ann.Civ.St. reads as follows: "The Commissioners Court of each county, acting in conjunction with the sheriff, may employ not more than eight (8) regular deputies nor more than four (4) additional deputies for special emergency to aid said regular deputies, to be known as County Traffic Officers to enforce the Highway Laws of this State regulating the use of the public Highways by motor and other vehicles. Said deputies shall be, whenever practicable motor cycle riders and shall be assigned to work under the direction of the sheriff. They shall give bond and take the oath of office as other deputies. They may be dismissed from service on request of the sheriff whenever approved by the Commissioners Court, or by said Court on its own initiative whenever their services are no longer needed or have not been satisfactory. The Commissioners Court shall fix their compensation prior to their selection, and may provide at the expense of the county necessary equipment for said officers. The pay of said deputies shall not be included in the settlements of the sheriff in accounting for the fees of office. Said deputies shall at all times cooperate with the police department of each city or town within the county in the enforcement of Traffic Laws therein and in all other parts of the county. The said deputies shall have same right and duty to arrest violators of the law as other peace officers have."

It was by virtue of this provision of the statutes that the Bexar County traffic officers were appointed and maintained in office.

It is the contention of the Commissioners' Court that this article should be so construed as to give to them the right to appoint the traffic officers, and to discharge any one of such officers in the event his services should be no longer needed or were not performed in a manner satisfactory to the Commissioners' Court, and that the only authority that the Sheriff would have would be to direct their conduct and recommend their discharge.

It is clear from the reading of this article that these traffic officers are deputy sheriffs, and that the Sheriff would be liable upon his official bond for their misconduct. Art. 6699b Vernon's Ann.Civ.St. If this article is to be given the above construction it is clearly invalid as making the Sheriff liable for the acts of officers that he does not have the right to employ, direct, control and discharge, thereby denying to him "due process of law."

It is the duty of the courts to place such construction, if possible, upon a statute as to make it valid rather than invalid. It occurs to us that this article should be construed as giving the Commissioners' Court authority, acting in conjunction with the sheriff, to determine whether or not it is desirable to have traffic officers in a particular county, and if so, how many are to be employed (not exceeding the number provided for by the statutes), and at what salary. The Commissioners' Court may also dispense with the service as a whole whenever it is no longer needed or has proven unsatisfactory as a policy. Such officers being deputy sheriffs would be appointed by the Sheriff, with the approval of the Commissioners' Court, to be directed and controlled by him, and it would be the mandatory duty of the Commissioners' Court to discharge one or all of such traffic officers if recommended by the Sheriff. Such a construction would do no violence to any provision of the Constitution and would render the act valid; whereas, if given the construction urged by the Commissioners' Court, it would be plainly invalid.

The trial court erred in not granting appellant, Will W. Wood, the relief sought by him.

Accordingly, the order refusing the temporary injunction will be reversed and such relief here granted, pending trial of the suit for permanent injunction, on its merits.

Reversed and rendered.