CHARLES W. ANDERSON, COUNTY JUDGE, ET AL
V. WILL W. WOOD, SHERIFF.

No. 7805. Decided May 14, 1941.
Rehearing overruled July 9, 1941.
(152 S. W., 2d Series, 1084.)

202

*John R. Shook,* Criminal District Attorney, *Pat Camp, Benton Davies,* and *T. H. Ridgeway,* Assistants, all of San Antonio, for plaintiffs in error.

To provide and keep in repair courthouses, etc., necessarily includes elevator services, engineer service and janitor service all of which are committed by statutes to the custody of the commissioners court of the various counties. Dodson v. Marshall 118 S. W. (2d) 623.

*John H. Wood, Jr., Weber & Wolfe,* both of San Antonio, for defendant in error.

Since the courthouse is placed under the charge and control of the sheriff of the county, by Article 6872, R. S. 1925, said sheriff has the right to employ, direct, control and discharge janitors, elevator operators and courthouse custodians. Mills County v. Lampasas County, 90 Texas 603, 40 S. W. 403; Austin Bros v. aPtton, 288 S. W. 182.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

The Sheriff of Bexar County brought this suit against the Commissioners' Court of said county .and others, to restrain the defendants from interfering with the alleged right of the sheriff to employ and discharge the court house engineer, janitors and elevator operators, jail guards and jail matrons, and county traffic officers. Upon a hearing on the application for a temporary injunction, the trial court held that the right to employ and discharge the above-mentioned court house employees rested exclusively in the Commissioners' Court; that the right to employ and discharge the jail employees above mentioned rested exclusively in the sheriff; and that the sheriff had the right to direct the traffic officers above referred to in the performance of their duties, but that the Commissioners' Court had the right to discharge them, either on the request of the sheriff or on its own initiative, when their services were either unsatisfactory or no longer needed. A temporary injunction was granted by the trial court only to the extent that the above-mentioned conclusions were in favor of the sheriff. Upon appeal by the sheriff, the Court of Civil Appeals reversed the judgment of the trial court, and granted the temporary injunction in all respects as prayed for by the sheriff, pending a trial on the merits. 143 S. W. (2d) 96. The Commissioners' Court sued out a writ of error to this Court.

1 We will first discuss the question as to who has the right to employ and discharge the court house engineer, janitor, and elevator operators. The exact question here under consideration does not appear to have ever been judicially determined in this State. Our Constitution, Article V, Section 18, provides in part as follows: "The county commissioners so chosen, with the county judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." While under the above constitutional provision the jurisdiction of the commissioners' court over county business is not general and all-inclusive, but is limited to such as is specifically conferred by the Constitution and statutes (Mills County v. Lampasas County, 90 Texas 603, 40 S. W. 403), yet the commissioners' court is the acting governing body of the county. Ehlinger v. Clark, 117 Texas 549, 8 S. W.

(2d) 666; Jernigan v. Finley, 90 Texas 205, 38 S. W. 24; Anderson v. Parsley, 37 S. W. (2d) 358. It is the general business and contracting agency of the county, and it alone has authority to make contracts binding on the county, unless otherwise specifically provided by statute. 11 Tex. Jur. 630; American Disinfecting Co. v. Freestone County, 193 S. W. 440; Germo Mfg. Co. v. Coleman County, 184 S. W. 1063; Matthews Lumber Co. v. Van Zandt County, 77 S. W. 960; Fayette County v. Krause et al., 73 S. W. 51. Where a right is conferred or obligation imposed on said court, it has implied authority to exercise a broad discretion to accomplish the purpose intended. 11 Tex. Jur. 565; City Nat. Bank v. Presidio County, 26 S. W. 775; Gusett v. Nueces County (Com. App.), 235 S. W. 857; Dodson v. Marshall, 118 S. W. (2d) 621.

2 On the other hand, a sheriff has no authority to make contracts that are binding on the county, except where he is specially so authorized to do by statute. 11 Tex. Jur. 636; Germo Mfg. Co. v. Coleman County, 184 S. W. 1063; American Disinfectant Co. v. Freestone County, 193 S. W. 440; Sparks v. Kaufman County, 194 S. W. 605.

Revised Statutes, Article 2351, imposes on the Commissioners' Court the duty to "Provide and keep in repair court houses, jails and all necessary public buildings." The duty thus imposed is not limited to the furnishing of a bare building and keeping it in repair. It contemplates an inhabitable court house; one that is usable for the purposes intended. This would include the furnishing of heat, elevator service where needed, as well as janitor service to keep it clean and usable. Since it is under the duty of providing these conveniences, the Commissioners' Court has at least the implied power and authority to contract therefor. Dodson v. Marshall (Civ. App.), 118 S. W. (2d) 621. We think that the Commissioners' Court has authority to select, contract with, and discharge the above-mentioned court house employees.

The sheriff relies on Revised Statutes, Article 6872, as giving him authority to hire and discharge such employees. That Article reads as follows:

"Sheriffs shall have charge and control of the court houses of their respective counties, subject to such regulations as the commissioners court may prescribe; and the official bonds

shall extend to and include the faithful performance of their duties under this article."

The above statute places the sheriff in charge and control of the court house merely for the purpose of keeping order and preserving the property. These are ministerial duties that are in keeping with the duties of a peace officer. It was not intended to invest the sheriff with discretionary power to contract for and on behalf of the county with employees to keep the building in a usable condition. These are duties that call for the exercise of discretion in the use of the contracting power of the county, such as is vested in the Commissioners' Court.

It is suggested that, since the above statute places the sheriff in charge of the court house, and makes him responsible on his official bond for the faithful performance of his duties, it is unreasonable not to allow him to select the employees who are to do the work necessary to properly keep the court house in a usable condition. This argument, however, erroneously assumes that he is responsible for keeping the building in a usable condition. Since he is responsible only for keeping order and preserving the property, these duties can be discharged by deputies of his own selection. On the contrary, to allow the Sheriff to select the janitor and elevator opreator, and make him responsible for the faithful performances of their duties, and thereby subject his bondsmen to liability for personal injuries caused by the negligent performance of the duties of such janitor or elevator operator, would be inconsistent with the general purpose of a sheriff's bond. We hold that the Commissioners' Court, and not the sheriff, has the authority to employ, direct, and discharge the above-mentioned court house employees.

The Commissioners' Court conceded in the trial court that the Sheriff had the right to select and discharge the jail guards and matorns, and has assigned no error on account of the ruling of the trial court thereon. Consequently, we give no further consideration to that point.

3 The next point relates to the question of who has the right to employ and discharge county traffic officers. Both parties seem to rely on Acts 1935, 44th Leg., p. 711, ch. 306 (Vernon's Annotated Statutes, Art. 6699b), for their authority

to appoint the traffic officers in question. Said Act reads in part as follows:

"Sec. 1. The Commissioners Court of each county, acting in conjunction with the sheriff, may employ not more than eight (8) regular deputies nor more than four (4) additional deputies for special emergency to aid said regular deputies, to be known as County Traffic Officers to enforce the Highway Laws of this State regulating the use of the public Highways by motor and other vehicles. * * *

\* \* \* \* \*

"Sec. 4. The provision of this Act shall apply to all counties in this State having a population of more than one hundred and twenty-five thousand (125,000) according to the preceding Federal Census. Provided, this Act shall not apply to counties of not less than one hundred and ninety-five thousand (195,000) population, nor more than two hundred and five thousand (205,000) population according to the last preceding Federal Census."

Upon a thorough investigation we are convinced that this Act is unconstitutional. Section 56, Article III, of the State Constitution reads in part as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

\* \* \* \* \*

"Regulating the affairs of counties, cities, towns, wards or school districts;

\* \* \* \* \*

"Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;

\* \* \* \* \*

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted; * * *."

It will be noted that the first sentence of Section 4 of the Act here under consideration provides:

"The provisions of this Act shall apply to all counties in this State having a population of more than one hundred and

twenty-five thousand (125,000) according to the preceding Federal Census."

If this were the only limitation on the application of the Act, its validity could be sustained as a general law on the ground that the classification is broad enough to include a substantial class, and the necessity for classification on the basis employed seems to bear some real and fair relation to the subject of the legislation. Clark v. Finley, Comptroller, 93 Texas 178, 545 S. W. 343. But the second sentence of Section 4 provides:

"Provided, this Act shall not apply to counties of not less than one hundred and ninety-five thousand (195,000) population, nor more than two hundred and five thousand (205,000) population according to the last preceding Federal Census."

An examination of the 1930 Federal census discloses that Tarrant County is the only county in the State having a population in excess of 125,000 that is excluded from the provisions of the Act. We can conceive of no reason why the Commissioners' Courts of counties with a population of less than 195,000 and those with populations in excess of 205,000 should have a right to employ county traffic officers, while the Commissioners' Court of Tarrant County, such county having a population of between 195,000 and 205,000, should not have such right. The necessity for the employment of traffic officers in Tarrant County appears to be as urgent as in counties of lesser population. The classification appears to be an arbitrary one bearing no relation to the subject of legislation, and as a consequence this particular section of the Act is void as a local or special law. Miller v. County of El Paso 136 Texas 370, 150 S. W. (2d) 1000; City of Fort Worth v. Bobbitt, 121 Texas 14, 36 S. W. (2d) 470; Bexar County v. Tynan, 97 S. W. (2d) 467.

It is very well settled that a statute excepting certain counties arbitrarily from its operation is a "local or special" law within the meaning of the above constitutional provision. Hall v. Bell County, 138 S. W. 178; affirmed by the Supreme Court, Bell County v. Hall, 105 Texas 558, 153 S. W. 121; Webb v. Adams (Ark.), 23 S. W. (2d) 617; State v. B. & Q. R. Co., 195 Mo. 228, 93 S. W. 784, 113 Am. St. Rep. 661; 6 R. C. L. 129, 59 C. J. 736. This last proviso exempting counties with a

population between 195,000 and 205,000 is a part of the original Act, and is not an amendment thereto. Since it is void, the whole Act must be declared void, because otherwise the Court would have to apply the Act to all counties having a population in excess of 125,000, and this would be giving the Act a broader scope than was intended by the Legislature. The rule applicable in such cases is thus stated in Lewis' Sutherland, Statutory Construction (2d Ed.), vol. 1, sec. 306, as follows: "If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the validity of such part." Substantially the same rule is announced in Ruling Case Law, vol. 6, p. 129. The above rule was followed by this Court in Texas-Louisiana Power Co. v. City of Farmersville, 67 S. W. (2d) 235, 238. See also James C. Davis, Director General, v. George Wallace, 257 U. S. 477, 66 L. Ed. 325.

Notwithstanding the fact that the above Act is unconstitutional, there is another Act applicable to all counties in this State which authorizes the appointment of such traffic officers. It limits the appointment to two regular traffic officers and two additional deputies. Revised Statutes, Art. 6699 as amended Acts 1937, 45th Leg., p. 438, ch. 225, sec. 1. The provisions of this Act with reference to the authority to appoint and discharge such traffic officers are the same as those contained in the above-mentioned Article 6699b. Article 6699 provides in part as follows:

"The Commissionerrs Court of each county, acting in conjunction with the Sheriff, may employ not more than two (2) regular deputies, nor more than two (2) additional deputies for special emergency to aid said regular deputies, to be known as county traffic officers to enforce the highway laws of this State regulating the use of the public highways by motor vehicles. Said deputies shall be, whenever practicable, motorcycle riders, and shall be assigned to work under the direction of the Sheriff. They shall give bond and take oath of office as other deputies. They may be dismissed from service on request of the Sheriff whenever approved by the Commissioners Court, or by said Court on its own initiative, whenever their services are no longer needed or have not been satisfactory."

It seems plain from the provisions of the above statute

that neither the sheriff nor the Commissioners' Court alone may select such traffic officers. The Commissioners' Court may select them only when acting in conjunction with the sheriff. Likewise, the sheriff may act only in conjunction with the Commissioners' Court. The sheriff alone may not discharge such officers. Such officers may be discharged at his request only with the approval of the Commissioners' Court. On the contrary, the Commissioners' Court alone may discharge such officers when their services are no longer needed or have not been satisfactory. This is in accordance with the plain letter of the statute as enacted by the Legislature. Whether or not the sheriff would be liable on his official bond for the negligent acts of a traffic officer who had remained in the service without his permission and over his protest is a matter not before us.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered May 14, 1941.

Rehearing overruled July 9, 1941.